# Arnold & Porter

February 23, 2023

<u>**VIA ECF**</u>

Hon. J. Paul Oetken
U.S. District Court S.D.N.Y
40 Foley Square, Courtroom 706
New York, New York 10007

  Re:  *Nike, Inc. v. lululemon usa, inc.* **(Case No. 1:23-cv-00771-JPO)**

Dear Judge Oetken,

  We represent Nike, Inc. ("Nike") in the above-referenced matter. Nike respectfully requests that the Court disqualify Knobbe, Martens, Olson & Bear, LLP ("Knobbe") from representing lululemon usa inc. ("lululemon") in this action.

### A. Introduction

  For a half decade from 2014–2019, Knobbe was a trusted partner of Nike's. Knobbe represented Nike in over 100 matters, with billings amounting to nearly $1 million. Most of those matters are substantially related to the issues presented here.

  Nike alleges in its Complaint that lululemon infringes several patents related to Nike's Flyknit technology. During its prior representation of Nike, Knobbe advised Nike on wide range of patent procurement and protection strategies, including strategies related to Nike's Flyknit patents and its infringement claims against lululemon. Craig Summers, a partner at Knobbe who is a member of Knobbe's litigation team in this case, managed all of that prior work for Knobbe. While representing Nike, Knobbe and Mr. Summers acquired confidential and privileged information about many aspects of Nike's business, including its development, testing, manufacturing, and patenting of Flyknit technology. This information is inextricably intertwined with the issues in this case. If Knobbe is permitted to represent lululemon in this matter, there is a high likelihood lululemon would use this information to Nike's detriment. Knobbe's representation of lululemon in this case thus risks tainting the integrity of this proceeding, and they should be disqualified.

### B. Factual Background

  Knobbe is a law firm that practices exclusively in the area of "intellectual property and technology law." *About Us*, KNOBBE MARTENS, https://www.knobbe.com/about-us (last visited Feb. 22, 2023). Mr. Summers is a partner in Knobbe's Orange County office. *Craigh S. Summers*, KNOBBE MARTENS, https://www.knobbe.com/attorneys/craig-s-summers (last visited Feb. 22, 2023). Mr. Summers is a member of Knobbe's litigation team for lululemon in this action. Ex. A.

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW   |   Washington, DC 20001-3743   |   **www.arnoldporter.com**

US 173321662v3

**Arnold & Porter**

February 23, 2023
Page 2

During a five-year period from 2014 to 2019, Knobbe and Mr. Summers represented Nike on nearly 100 matters, with billings amounting to $1 million. Exs. B, L. Those matters included:

1. Advising Nike on the prosecution of patents, including (a) advice on individual applications pending before the U.S. Patent and Trademark Office and (b) advice on Nike's overall patent prosecution strategy, which applied to patents directed to Nike's Flyknit technology, Exs. C, D, F–J;

2. Advising Nike on  Exs. E, F–J; and

3. Advising Nike on  Exs. B, E.

In connection with this half-decade of representation, Knobbe and Mr. Summers acquired and reviewed a wide variety of confidential and privileged information, including:

1. Conferring with Nike's in-house lawyers on numerous occasions, discussing legal aspects of Nike's development, testing, and patenting of Nike's Flyknit technology;

2. Receiving confidential and privileged materials related to the development and testing of Nike's Flyknit technology;

3. Receiving confidential and privileged materials related to Nike's patent prosecution strategies for pending and future patent prosecution matters;

4. Receiving and analyzing a variety of confidential knitted materials and prototypes embodying Nike's Flyknit technology. *See* Exs. B–J.

On January 30, 2023, Nike filed its Complaint against lululemon in this action, asserting infringement of three patents related to aspects of Nike's Flyknit technology: U.S. Patent Nos. 8,266,749; 9,375,046; and 9,730,484 (collectively, the "Asserted Patents").

February 23, 2023
Page 3

One of the Asserted Patents, U.S. Patent No. 9,730,484, was pending before the Patent Office during the time Knobbe represented and advised Nike.

On February 13, 2022, Knobbe and Mr. Summers informed Nike that they had been retained by lululemon in connection with this action. Ex. A. Nike promptly requested that Knobbe withdraw from representation of lululemon given Knobbe's prior representation of Nike in substantially related matters. Ex. K. Knobbe refused to do so.

### C. Knobbe Should Be Disqualified

Courts have an "inherent power to preserve the integrity of the adversary process," which includes the authority to disqualify attorneys posing a threat to that integrity. *Hempstead Video, Inc. v. Incorporated Village of Valley Stream,* 409 F.3d 127, 132 (2005). Whether the facts merit disqualification "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.S2d 60, 72 (2d Cir. 1990). A court "should not hesitate to grant such a motion if there is any doubt" about counsel's ability to fulfil its ethical obligations. *World Food Sys, Inc. v. Bid Holdings, Ltd.*, 2001 WL 246372, at *3 (S.D.N.Y March 12, 2001). "Any doubt is to be resolved in favor of disqualification." *Filippi v. Elmont Union Free School Dist. Bd. Of Educ.*, 722 F. Supp. 2d 295, 303 (E.D.N.Y 2010).

Disqualification is warranted when an attorney's "successive representation of adverse interests raises the possibility that in the present matter he will improperly use confidences gained in the prior representation to the detriment of his former client." *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985). Disqualification is appropriate even if the gained advantage "goes only to background matters." *Streichert v. Town of Chester*, No. 19-cv-7133, 2021 WL 735475, at *12 (S.D.N.Y. Feb. 25, 2021). This Court applies a three-element test to identify when "successive representation" warrants disqualification:

a) the moving party is a former client of the adverse party's counsel;

b) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

c) the attorney whose disqualification is sought has access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 212 (S.D.N.Y. 2009). *See also* N.Y. RULE OF PROF. CONDUCT 1.9(a); ABA MODEL R. 1.9(a).

The first and third elements of this test are easily satisfied in this case. For the first element, Nike has attached numerous documents that show Nike is a former client of

**Arnold & Porter**

February 23, 2023
Page 4

lululemon's counsel, Knobbe. Exs. B–H. For the third element, the same documents show that Knobbe "had access to, relevant privileged information in the course of [its] prior representation" of Nike.  *See* Exs. B–H.

The Court's test thus collapses into a single inquiry in this case: whether there is "a substantial relationship between the subject matter of [Knobbe's] prior representation of [Nike] and the issues in the present lawsuit." Here, not only is there a "substantial relationship" between Knobbe's prior representation of Nike and the issues in this lawsuit—the two are inextricably intertwined.

When an attorney advises a client on high-level strategies for intellectual property procurement, courts frequently find later infringement lawsuits "substantially related." *E.g.*, *Miroglio, s.p.a. v. Morgan Fabrics Corp.,* 340 F. Supp.2d. 510, 513 (S.D.N.Y. 2004). That is true even when matters don't involve the same intellectual property. *Id.* In *Miroglio*, for example, the court disqualified plaintiff's counsel because they had previously represented the defendant in three copyright matters. *Id.* Even though the copyright asserted in the later litigation was different from those in the prior matters, the court found the issues "substantially related." The court explained that "a reasonable attorney handling those prior matters "would be expected to acquire a minimum base of knowledge about how Morgan goes about creating designs." *Id.* The Court highlighted other overlapping issues "likely to arise" in the litigation, including the copyrighted owner's legal strategies for obtaining copyrights and for proving infringement. *Id.*

The same logic applies for patents. *E.g.*, *Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608 (D. Md. 2002) (disqualifying attorneys who had previously advised plaintiff in procuring certain patents and then later represented defendant in plaintiff's infringement suit asserting a different but related patent).  In *Innovation Ventures, Inc. v. N2 Distribution, Inc.*, for example, the court concluded that the matters were "unquestionably related" because they concerned intellectual property strategies for the same product:

> In the case at bar, the subject matter of the prior representation and the instant lawsuit is unquestionably related: the underlying products are the same in both instances. Moreover, as in *General Electric,* Dickinson Wright attorneys received confidential information "concerning the formulas for 5 HOUR ENERGY® products, strategies as to what should be patented, and other matters relating to the Company's 5 Hour Energy® products."

No. 08-10983, 2009 WL 2381836, at *2 (E.D. Mich. July 31, 2009).  Similarly, in *Nasdaq, Inc. v. Miami International Holdings, Inc.*, the court disqualified law firm Fish & Richardson because it was "intimately familiar with Nasdaq's strategic approaches to managing its technology and inventions." No. cv-176664, 2018 WL 4258154, at *4 (D.N.J. Sept. 6, 2018).  The court explained:

> What Nasdaq has in the way of patents related to the electronic trading technology field, and what Nasdaq protected as trade secrets apart from its

US 173321662v3

**Arnold & Porter**

February 23, 2023
Page 5

patented inventions, was shaped by Fish's IP counseling and strategy over the course of a decade . . . This confidential information would necessarily include information from Nasdaq related to Nasdaq's strategic approach to its intellectual property and patent prosecution, and include information bearing on validity. *Id.*

This case is no different. During their half-decade representing Nike, Knobbe provided Nike with both (i) high-level patent strategies and (ii) counseling and advice on specific Flyknit-related issues. For example, Knobbe advised Nike on ███████████████████████████████████████████████████████████████████████ Ex. J at 1. As part of that effort, they advised Nike about ████████████████████████████████████████████████████████ *Id.* at 1. They also advised Nike on ████████████████████████████████████████ *Id.* As another example, Knobbe created a ██████████████████████████████████████. Exs. F, H. One of the items discussed is ████████████████ Ex. H. ████████████████████████ *Id.*

Nike's development, testing, and patenting of Flyknit technologies was thus "shaped by [Knobbe's] counseling and strategy" over the course of a half-decade. *See Nasdaq*, 2018 WL 4258154, at *4; *see also Innovation Venture*, 2009 WL 2381836, at *2. Almost every aspect of Knobbe's representation of Nike will be directly adverse to the arguments lululemon will likely raise when it attempts to challenge the validity of Nike's asserted patents in this case. This "raises the possibility that in the present matter [Knobbe] will improperly use confidences gained in the prior representation to the detriment of [Nike]." *USFL*, 605 F. Supp. at 1452. Unless Knobbe is disqualified, lululemon will gain an "advantage not otherwise available but for the prior confidential relationship, even if that advantage goes only to background matters." *Streichert*, 2021 WL 735475, at *12.

For these reasons, Knobbe's successive representation of Nike and lululemon risks tainting the integrity of this proceeding. Nike requests that the Court disqualify Knobbe from representing lululemon in this case.

Best regards,

/s/ *Christopher J. Renk*
Christopher J. Renk
Michael J. Harris
Aaron P. Bowling
Michael J. Gershoni
Bridgette C. Gershoni
Michael J. Sebba

*Counsel for Plaintiff Nike, Inc.*

US 173321662v3

**Arnold & Porter**

February 23, 2023
Page 6

| Table of Exhibits | |
|---|---|
| Ex. A | Feb. 13, 2023 – Email from Knobbe to Arnold & Porter |
| Ex. B | List of Knobbe Matters for Nike |
| Ex. C | Dec. 4, 2018 – Email Summers to Saraceni – "Nike Status Reports" |
| Ex. D | Dec. 4, 2018 – Knobbe IP Matters Report (patent prosecution) |
| Ex. E | Dec. 4, 2018 – Knobbe IP Matters Report (non-prosecution) |
| Ex. F | Oct. 14, 2016 – Email Seelig to Staihar – "U.S. Patent Heat Map" |
| Ex. G | Oct. 14, 2016 – "US Patent Heat Map Risk Reduction Techniques" |
| Ex. H | Oct. 14, 2016 – "U.S. Product Testing Heat Map – Patents" |
| Ex. I | Jan. 17, 2017 – Email Seelig to Stricklin – "Revised Talking Points" |
| Ex. J | Jan. 17, 2017 – Public Disclosure Talking Points Memorandum |
| Ex. K | Feb. 16, 2023 – Email from Arnold & Porter to Knobbe |
| Ex. L | Dec. 7, 2018 – Email Summers to Saraceni |