Ali S. Razai
ali.razai@knobbe.com
Joseph F. Jennings
joe.jennings@knobbe.com
Brandon G. Smith
brandon.smith@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main St., 14th Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile:  (949) 760-9502

Inzer C. Ni
inzer.ni@knobbe.com
Stacy Rush
stacy.rush@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1155 Avenue of the Americas, 24th Floor
New York, NY 10036
Telephone: (212) 849-3000
Facsimile: (212) 849-3001

Jonathan E. Bachand
jonathan.bachand@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Avenue N.W.
Suite 900
Washington, DC 20006
Tel: (202) 640-6400
Fax: (202) 640-6401

Yanna S. Bouris
Yanna.bouris@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East
Suite 400
Los Angeles, CA  90067
Tel: (310) 551-3450
Fax: (310) 601-1263

Attorneys for Defendant
LULULEMON USA INC.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>LULULEMON USA INC.,<br><br>        Defendant. | Case No.: 1:23-cv-00771-AS<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ................................................................................1

II.    LEGAL STANDARD.........................................................................1

III.   NON-INFRINGEMENT.....................................................................2

    A.    lululemon Does Not Infringe The '484 Patent........................2

        1.    The Chargefeel Mids Cannot Infringe the '484 Patent Because They Do Not Include "Domed" Structures Configured to Extend Over the Top of the Foot ................................................3

           a.    Chargefeel Mid ................................................................4

               i.    No reasonable juror could conclude the Chargefeel Mid's alleged "flat-knitted element" has the claimed domed structure. ........................4

               ii.    The Chargefeel Mid's "three-dimensional structure" is not "configured for extending over the top of a foot." ................................................5

           b.    Chargefeel Mid 2.0 ........................................................6

               i.    No reasonable juror could conclude the Chargefeel Mid 2.0's alleged "flat-knitted element" has the claimed domed structure "configured for extending over the top of a foot.". ................................................6

    B.    lululemon Does Not Infringe The '046 Patent........................7

        1.    The Chargefeel Mids Cannot Infringe the '046 Patent Because They Do Not Include "Tubular Structures"................................8

IV.   THE '749 PATENT WOULD HAVE BEEN OBVIOUS .................................12

    A.    Overview of the '749 Patent .................................13

    B.    The Prior Art adidas Shoes .................................14

    C.    Claim 1 Would Have Been Obvious Over Each Of The A3 Shoe And Wrestling Shoe.................................15

        1.    Preamble: A Method of Manufacturing an Article of Footwear................15

**TABLE OF CONTENTS**
*(cont'd)*

**Page No.**

2.   Step 1a: Simultaneously Knitting a Textile Element With a
     Surrounding Textile Structure.................................................15

3.   Step 1b: Having At Least One Knitted Texture That Differs
     From A Knitted Texture In The Surrounding Knitted Textile
     Structure.........................................................................20

4.   Step 3: Incorporating the Knitted Textile Element into the
     Article of Footwear............................................................22

5.   The Level of Skill in Art is Not Disputed and Does Not Alter
     the Obviousness Conclusion..................................................22

6.   There is No Evidence of Secondary Considerations and, Even
     if There Were, They Would Not Alter the Obviousness
     Conclusion.......................................................................22

D.   Claim 14 Would Have Been Obvious Over Each Of The adidas A3
     Shoe And Wrestling Shoe....................................................23

V.   CONCLUSION.......................................................................24

# TABLE OF AUTHORITIES

**Page No(s).**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................1

*Bai v. L & L Wings, Inc.*,
160 F.3d 1350 (Fed. Cir. 1998)................................................................................2

*Exigent Tech. Inc. v. Atrana Sols., Inc.*,
442 F.3d 1301 (Fed. Cir. 2006)................................................................................2

*Ferring B.V. v. Watson Labs., Inc.*,
764 F.3d 1401 (Fed. Cir. 2014)..............................................................................12

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
389 F.3d 1370 (Fed. Cir. 2004)................................................................................2

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)...................................................................................................13

*Intercontinental Great Brands v. Kellogg N.A.*,
869 F.3d 1336 (Fed. Cir. 2017)..............................................................................20

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)...............................................................................13, 19, 20, 22

*Mas-Hamilton Grp. v. LaGard, Inc.*,
156 F.3d 1206 (Fed. Cir. 1998)................................................................................2

*MyMail Ltd. v. Am. Online, Inc.*,
476 F.3d 1372 (Fed. Cir. 2007)................................................................................5

*Ohio Willow Wood, Co. v. Alps South*,
LLC, 735 F.3d 1333 (Fed. Cir. 2013)...............................................................13, 23

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*,
469 F.3d 978 (Fed. Cir. 2006)..................................................................................2

*Palmer/Kane LLC v. Rosen Book Works LLC*,
204 F. Supp. 3d 565 (S.D.N.Y. 2016)......................................................................1

*Power Mosfet Techs., LLC v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004)................................................................................5

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Southwall Tech., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995)..................................................................................2

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
    721 F.3d 1540 (Fed. Cir. 1983)..............................................................................13

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA*,
    683 F.3d 1356 (Fed. Cir. 2012)..............................................................................19

## OTHER AUTHORITIES

35 U.S.C. § 102.......................................................................................................14

35 U.S.C. § 103.......................................................................................................13

Fed. R. Civ. P. 56......................................................................................................1

## I.  INTRODUCTION

Nike has alleged that lululemon infringes three patents.[1]  Nike cannot raise any triable issues and summary judgment is appropriate in favor of lululemon on each of Nike's patent claims.

For two of the asserted patents, Nike fails to show the accused products include every claim limitation.  As to the '484 patent, Nike cannot show lululemon infringes because the accused products are not made with the required "domed, three-dimensional structure configured for extending over the top of the foot."  Infringement is impossible for two independent reasons.  First, the accused products do not contain any "domed" structure.  Second, the purportedly "domed" structures alleged by Nike are not "configured for extending over the top of the foot."

As to the '046 patent, Nike cannot show lululemon infringes because the accused products do not include the claimed "tubular structures," but instead include conventional knitted ribs.

The third asserted patent, the '749 patent, claims a broad method for knitting a textile element.  But that broad method would have been obvious in light of prior art shoes sold by adidas.

## II.  LEGAL STANDARD

A movant is entitled to summary judgment if the record shows that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c).  A "material fact" is one that "might affect the outcome" of the case."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  "The movant bears the burden of demonstrating the absence of a genuine dispute of fact, and, to award summary judgment, the court must be able to find after drawing all reasonable inferences in favor of a non-movant that no reasonable trier of fact could find in favor of that party."  *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016).

---

[1] U.S. Patent Nos. 9,375,046 ("the '046 patent"), 9,730,484 ("the '484 patent"), and 8,266,749 ("the '749 patent").  *See* Defendant lululemon USA Inc.'s Rule 56.1 Statement of Uncontested Material Facts in Support of Its Motion for Summary Judgment ("SoF") at ¶ 1.

### III.  <u>NON-INFRINGEMENT</u>

Literal infringement requires that the accused device embody every limitation of a claim. *See Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  Infringement is a question of fact and summary judgment is appropriate if no reasonable jury could find that every limitation recited in the properly construed claim is found in the accused device.  *Bai v. L & L Wings, Inc.*, 160 F.3d 1350 (Fed. Cir. 1998).  The absence from the accused product of even one limitation in the claim means that, as a matter of law, there is no literal infringement of that claim. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004); *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).  Where a defendant seeks summary judgment of non-infringement of a patent, "nothing more is required than the filing of a . . . motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused [products] did not meet the claim limitations." *Exigent Tech. Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006).  The burden of production then shifts to the patentee to "identify genuine issues that preclude summary judgment." *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 990 (Fed. Cir. 2006).

### A.    <u>lululemon Does Not Infringe The '484 Patent</u>

Nike asserts lululemon's Chargefeel Mid and Chargefeel Mid 2.0 shoes ("Chargefeel Mids") infringe claim 1 of the '484 patent.  SoF at ¶¶3 and 8.  Neither infringes.

Claim 1 recites an article of footwear having a "flat-knitted element" including "a central portion having a domed, three-dimensional structure configured for extending over the top of the foot."  SoF at ¶¶3-4.  The claim requires that "the domed, three-dimensional structure" is "shaped to extend above the plane of the first side portion and the second side portion when the flat-knitted element is in a flattened configuration."  *Id.*  The '484 patent illustrates such an embodiment in Figures 10A-10C.  This domed shape is shown in yellow:



SoF at ¶¶4-6.

At the *Markman* hearing, the parties and the Court agreed the claimed flat-knitted elements, which include the claimed dome, "have to be formed from the flat knitting process described in the claim." D.I. 127 at 83:2-5; SoF at ¶7. Consistent with this understanding, the Court construed "flat-knitted element" to mean "the formed flat-knitted element including a first layer . . . ." D.I. 98 at 9; SoF at ¶7. Accordingly, the "domed, three-dimensional structure configured for extending over the top of the foot," must be in the "flat-knitted element" when it is removed from the knitting machine and in a flattened configuration.

1.    **The Chargefeel Mids Cannot Infringe the '484 Patent Because They Do Not Include "Domed" Structures Configured to Extend Over the Top of the Foot**

Summary judgment of non-infringement of the '484 patent is appropriate for two independent reasons. First, Nike cannot identify any "domed" structure in the Chargefeel Mid. Second, even if the structures Nike points to were "domed," no reasonable juror could conclude either of them is configured to extend over the top of the foot as required by the claim.

a.     **Chargefeel Mid**

i.     **No reasonable juror could conclude the Chargefeel Mid's alleged "flat-knitted element" has the claimed domed structure.**

The collar of the Chargefeel Mid prior to assembly is shown below (left) next to the "domed, three-dimensional structure" shown in the '464 patent.[2]



SoF at ¶¶6, 10.  Nike contends the central collar portion (green arrow) satisfies the "domed, three-dimensional structure" requirement of the claim.  But Nike's expert—who based his opinions on photographs and videos of the collar after it is knitted—does not even opine the "flat-knitted element" of the Chargefeel Mid includes a portion shaped like a dome.  SoF at ¶¶11, 18.  Rather, he sidesteps "domed," stating, "[the claim] is not specified as having the shape of a dome.  I think it's meant more colloquially."  SoF at ¶12.  He testified "domed" merely requires "some sort of a curved structure that protrudes out of the plane."  SoF at ¶12.  He also contends that **all** three-dimensional knitted structures have "curves," stating, "When you're making three-dimensional structures with a knitting operation, you're going to have curvature associated with it."  SoF at ¶13.  But if "domed" merely requires a "curved structure" and if every "three-dimensional structure"

<hr>

2 Samples of the pre-assembly collars of the accused Chargefeel Mids have been lodged with this Motion.

necessarily has "curvature," the term "domed" would fail to add any limitation not already required by the "three-dimensional structure." Indeed, Nike's expert admits his reading of the claim renders "domed" superfluous. SoF at ¶13 ("I don't know that it adds anything. . . . I don't know that removing 'domed' would change the intent of the claim."). This is improper. *See, e.g.*, *Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored"). Nike cannot produce any evidence the accused lululemon shoes have the required domed structure and, thus, summary judgment is appropriate. *MyMail Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1378 n.1 (Fed. Cir. 2007) ("An expert opinion based on an incorrect claim construction does not create a dispute of material fact".) Because Nike has presented no evidence the Chargefeel Mid has a "domed" structure, no reasonable jury could find infringement of the '484 patent.

### ii.    The Chargefeel Mid's "three-dimensional structure" is not "configured for extending over the top of a foot."

Claim 1 requires that "the domed, three-dimensional structure" is "shaped to extend above the plane of the first side portion and the second side portion when the flat-knitted element is in a flattened configuration." SoF at ¶¶3-4. Further, that domed three-dimensional structure must be "configured for extending over the top of a foot." SoF at ¶¶3-4. Even if the "flat-knitted element" of the Chargefeel Mid included a "domed" three-dimensional structure, no reasonable juror could conclude that it is "configured for extending over the top of a foot," as claim 1 requires.

A photograph of the collar of the Chargefeel Mid prior to assembly into a shoe is shown below. SoF at ¶10. In the flattened configuration (as required by the claim language), the portion of the "flat-knitted element" indicated by the green arrow extends above the plane of the two side portions.



SoF at ¶10.  Once assembled into the shoe, the three-dimensional structure of the collar portion is not positioned to extend over the foot, but instead is positioned to sit against the wearer's ankle (below):



SoF at ¶14.  No reasonable juror could conclude that the structure is "configured for extending over the top of a foot," as required by the claim.  Summary judgment is appropriate for this independent reason.

        **b.**    <u>**Chargefeel Mid 2.0**</u>

                **i.**    <u>**No reasonable juror could conclude the Chargefeel Mid 2.0's alleged "flat-knitted element" has the claimed domed structure "configured for extending over the top of a foot.".**</u>

Nike also contends the collar of the Chargefeel Mid 2.0 is a "domed, three-dimensional structure."  SoF at ¶15.  The collar is shown below as an isolated component.  The image on the left is the collar before assembly into the shoe, and the image on the right is the collar directly after knitting.



SoF at ¶¶16-17.

Even if the Chargefeel Mid 2.0 included a "domed" structure, no reasonable juror could conclude that the "domed, three-dimensional structure" is "configured for extending over the top of a foot." The alleged "domed" (shown above in a generally flattened configuration) does not extend over the top of a foot when it is incorporated in an article of footwear.



SoF at ¶19. No reasonable juror could conclude that this "three-dimensional structure," is "configured for extending over the top of a foot." Because the collar of the Chargefeel Mid 2.0 does not have "a central portion having a domed, three-dimensional structure configured for extending over the top of a foot," there can be no infringement.

**B.    <u>lululemon Does Not Infringe The '046 Patent</u>**

Nike asserts the Chargefeel Mids infringe claims 1, 8, and 16 of the '046 patent. SoF at ¶¶20, 28. Claims 1 and 8 are independent. SoF at ¶¶20-22. Claim 16 depends from claim 1. SoF at ¶23.

Claims 1 and 16 require: "a plurality of tubular structure that are adjacent" to "a plurality of webbed areas." SoF at ¶24. Claim 8 requires: "a plurality of tubular rib structures" which are "disposed adjacent to" a "plurality of webbed areas." SoF at ¶24. Figures 4 and 5 show tubular structures bounded by adjacent webbed areas.



SoF at ¶¶25-26. During claim construction, the Court construed "tubular structures" to mean "tube-like structures." SoF at ¶27. The Court cautioned, however, that "Nike won't be well-heard to argue that structures bearing none of the characteristics of a tube are in fact tubular. SoF at ¶27.

### 1.    The Chargefeel Mids Cannot Infringe the '046 Patent Because They Do Not Include "Tubular Structures"

The '046 patent discloses and claims an article or upper that contains multiple "tubular structures" that are adjacent to multiple "webbed areas." SoF at ¶¶21-28. The accused products do not contain these claimed "tubular structures" mandating a finding of no infringement.

Nike contends that the collars of the Chargefeel Mids contain the required "tubular structures." SoF at ¶¶31-32, 36-37. Nike's expert contends that by a visual inspection of the collars, a POSITA would recognize that the Chargefeel Mids have the tubular structures recited

by the claims. SoF at ¶¶31-32, 36-37. But Nike's expert tries to thumb the scale by using annotations to create the appearance of tubes, when none exist. The figures below illustrate his contention with respect to the Chargefeel Mid:



SoF at ¶31 (highlighting and annotations added by Nike's expert). But the "tubular" purple highlighting is the expert's additions, not any structure in the Chargefeel Mid. Nike's expert includes similar highlighting for the Chargefeel Mid 2.0, as shown below:



SoF at ¶37 (highlighting and annotations added by Nike's expert). Again, there is nothing "tubular" in the Chargefeel Mid 2.0, except for the expert's highlighting.

Nike's expert then purports to show a cross-section of these structures in an unstretched configuration as shown below, in both Chargefeel Mids. Again, these images show nothing "tubular" until the expert annotated the photos to add arcs of a circle.



SoF at ¶¶33, 39.

lululemon's expert also took cross-sections of the knitted ribbed structures in both a stretched and an unstretched configuration. These photos demonstrate the structure of the knit material in the Chargefeel Mids without any annotations to distort its appearance:



Unstretched                         Stretched

**Chargefeel Mid**



Unstretched                         Stretched

**Chargefeel Mid 2.0**

SoF at ¶¶36, 41.[3]

---

[3] In the images, the knitted material was "mounted between two pieces of posterboard." SoF at ¶¶36, 41.

The differences between Figures 4 and 5 of the '046 patent and the cross-sections made by the experts illustrate the vast difference between the purported invention and the Chargefeel Mids rib structures.  Unlike the '046 patent, the Chargefeel Mids have no "tube-like" structures between adjacent webbed areas.  The only things "tube-like" are the annotations of Nike's expert.

In an attempt to create the appearance of "tubular structures," Nike's expert also inserted toothpicks into the rib structures of the lululemon shoe collars.  SoF at ¶34.  A cross-section of the toothpicks after they were asserted into the ribs of the cut fabric and then encased on an epoxy for the collar of the Chargefeel Mid is shown below.



SoF at ¶¶34, 41 (same with Chargefeel Mid 2.0 collar).  Nike's expert testified that his "experiment" shows that the Chargefeel Mids have a tube:

> A. If it wasn't a tube, it wouldn't be able to hide the entirety of the pick that I inserted
>
> through the opening. There wouldn't be an opening for a pick or cylinder or rod or
>
> whatever to go through.

SoF at ¶34.  But the fact that the expert could put a toothpick into a knit structure does not make that knit structure a tube.

Q. Well, couldn't you take a ball of yarn and put a pick into it and it would disappear?

A: I could. I don't know how that's relevant to this planar knit structure.

SoF at ¶35 (objection omitted).

Nike's expert never tried his "experiment" with a structure he agreed is non-tubular to show the results of inserting a toothpick into a known non-tubular structure.

Q. Okay. Did you try to [insert a toothpick into] a rib knit structure?

A. I didn't, but I have enough experience to know that that would be what happens.

Q. But you didn't do that for purposes of this report to show what would happen, correct?

A. No.

SoF at ¶35.

Nike's expert's "experiment" does not show the existence of tubular structures in the Chargefeel Mids. Moreover, the "experiment" is unreliable and should be excluded for the reasons stated in lululemon's concurrently filed *Daubert* motion to exclude certain testimony of Dr. Pastore. With no "tubular structures" there can be no infringement of independent claims 1 and 8, and therefore no infringement of any asserted claims. *Ferring B.V. v. Watson Labs., Inc.*, 764 F.3d 1401, 1411 (Fed. Cir. 2014) (if an independent claim is not infringement a claim dependent on that claim is also not infringed). Summary judgment of non-infringement should be granted for each of claims 1, 8, and 16 because Nike cannot carry its burden to show that the accused products have "tubular structures."

## IV.  THE '749 PATENT WOULD HAVE BEEN OBVIOUS

A patent is obvious if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter

pertains." 35 U.S.C. § 103(a).  Obviousness is a legal question based on underlying facts.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).  These facts are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any secondary considerations.  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  If "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."  *KSR*, 550 U.S. at 427.  "To support a finding of obviousness on summary judgment, the court must conclude that one of ordinary skill in the pertinent art would have found it obvious to bridge the differences between the subject matter of the claims and the prior art when the facts are viewed in a light most favorable to the patentee."  *Ohio Willow Wood, Co. v. Alps South*, LLC, 735 F.3d 1333, 1343 (Fed. Cir. 2013). The Federal Circuit has held that sales of a physical product can by prior art to a method claim if evidence shows "the public could learn the claimed proceed by examining" the physical product. *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.3d 1540, 1550 (Fed. Cir. 1983).

## A.    Overview of the '749 Patent

The '749 patent is broadly directed to a method of manufacturing an article of footwear. Claim 1 recites three basic steps: (1) simultaneously knitting a textile element with at least one texture that differs from a texture of a surrounding textile structure; (2) removing the knitted textile element from the surrounding knitted textile structure; and (3) incorporating the knitted textile element into the article of footwear.  SoF at ¶¶42-44.  Figure 9 shows "textile elements" (green) knitted with "surrounding textile structure" (purple).



Figure 9

SoF at ¶48 (annotated). The textile elements are removed from the textile structure with a "conventional cutting operation" and the textile elements are then incorporated into an article of footwear. SoF at ¶47. As described in the specification, the textile element includes two or more textures. SoF at ¶49. By definition, such textile element with two or more textures necessarily would have "at least one knitted texture that differs from a knitted texture in the surrounding knitted textile structure" as recited in claim 1. SoF at ¶44. Nike asserts claims 1 and 14 of the '749 Patent. SoF at ¶43. Claim 1 is independent, and claim 14 depends from independent claim 13. SoF at ¶¶42-46.

**B.    The Prior Art adidas Shoes**

Prior to the filing date of the '749 patent, adidas sold shoes having uppers with a multi-textured knitted textile element. The adidas a3 Shoe ("a3 Shoe") and the adidas 2000 Olympic Wrestling Shoe ("Wrestling Shoe") are prior art to the '749 patent under 35 U.S.C. 102(a) and/or (b) because each was made available to the public before the effective filing date of the '749 patent and was on sale in the United States more than one year prior to the effective filing date of the '749 patent. SoF at ¶¶50-69, 93-107. Nike's expert does not dispute that either adidas shoe is prior art. SoF at ¶¶71 and 110.



SoF at ¶¶77 and 94 (differing textures labeled in green and red on the a3 Shoe).

## C.    Claim 1 Would Have Been Obvious Over Each Of The A3 Shoe And Wrestling Shoe

It would have been obvious to a POSITA by the filing date of the '749 patent to use the method of claim 1 to manufacture the knitted uppers of the adidas a3 Shoe and Wrestling Shoe.

### 1.    Preamble: A Method of Manufacturing an Article of Footwear

The parties do not dispute that the adidas prior art was made through a method of manufacturing an article of footwear. SoF at ¶¶71 and 109.

### 2.    Step 1a: Simultaneously Knitting a Textile Element With a Surrounding Textile Structure

The parties agree that the uppers of the a3 Shoe and Wrestling Shoe are each warp knit uppers with multiple textures. SoF at ¶¶73-78, 111-115. In 2004, warp knit textiles could not be knit to shape. SoF at ¶¶49-80 (Nike's expert agreeing that warp knitting to shape was not possible in 2004). Because at the relevant time it would have been impossible to warp knit fabric to a specific shape (e.g., shape of an upper), a POSITA would have recognized that the textile elements of the a3 Shoe and the Wrestling Shoe were made by a knit-and-cut method. SoF at ¶¶81-82, 86, 117-118. Accordingly, a POSITA would have recognized, that the method of making the adidas shoes included knitting the textile elements within a larger knit structure and removing the textile elements to incorporate them into articles of footwear. SoF at ¶¶84-92, 119-125.

A POSITA seeking to use a warp knitted textile element in an article of footwear—as used in both the a3 Shoe and the Wrestling Shoe—would have understood there were less than a handful of ways to knit and cut these textile elements. SoF at ¶¶84-92, 119-125. Nike's expert's report identified only "two" ways outside the patented method for making the knit textile elements of the adidas shoes. SoF at ¶¶87-89, 119-125. But his two additional ways are effectively only one additional way—cutting the knit textile elements from adjacent knit textile elements, i.e., with no intervening textile structure. He just varied the size of the overall knit textile (top figure showing one row of textile elements; bottom figure showing three rows of textile elements):



*See* SoF at ¶¶87-89, see also SoF at ¶¶119-125.

So there were just two ways to make the knit textile elements of the adidas shoes: (1) knitting a large sheet of knitted textile elements with surrounding textile structure between them, then cutting the knitted textile elements from the surrounding textile structure, or (2) knitting textile elements adjacent to each other, i.e., without any intervening material. SoF at ¶¶84-92, 119-125.

Nike's expert does not dispute that the first of these two methods is encompassed by claim 1 of the '749 patent.[4]  And Nike cannot dispute that this first method was well-known prior to the '749 patent.  For example, in 1936, Zuckerman described methods of "simplify[ing] the production of knitted articles fashioned or shaped to conform with the foot."  SoF at ¶¶126-133.  Zuckerman describes knitting a continuous strip of knitted fabric 13.  SoF at ¶129.  The continuous strip of knitted fabric includes blanks 11 (the knitted textile elements).  SoF at ¶130.  The blanks (colored green) are then cut from the continuous strip, leaving the remaining portions (purple) of knitted fabric that separate each blank as shown below:



SoF at ¶132.  The blanks are then formed into an article of footwear.  SoF at ¶133.

The prior art Clothing Technology also shows the traditional approach of simultaneously knitting multiple textile elements on a wide panel of knitted material with surrounding textile material and then cutting the textile elements from the panel.  SoF at ¶¶134-135.  The surrounding textile structure (referred to as the "cutting loss") is highlighted yellow.

---

[4] Although in this motion lululemon is not relying on Zuckerman as an anticipatory reference, the knit structure outside the textile element is a "surrounding textile structure," as recited in claim 1.  Despite the fact that Nike's expert now disagrees, during Nike's litigation of this patent against adidas in the ITC, he expressly stated that "surrounding textile structure, which constitutes the area of textile outside of and between [the textile elements]."  *See* Ex. 4 of the Declaration of Ali S. Razai in Support of Motion to Exclude Testimony of Dr. Christopher Pastore at adidas_lululemon_00001363-1364.



1:  **Example of a cutting marker**

$L_a$  End allowance = allowance at the beginning and end of a layer

$L_v$  Lay length = marker length + end allowance

$A_r$  Edge allowance = allowance at the fabric edges

$V_a$  Cutting loss = waste from within the lay plan

$B_n$  Usable width = cloth width - edge allowance

$L_s$  Marker length

SoF at ¶135.

Knoblauch describes knitting multiple panties (each with multiple textures) in a single sheet of material.  SoF at ¶¶136-141.  Each panty was separated by "filling areas" 4.  *Id.*



SoF at ¶141.  Similarly, Yoshida describes making underpants, each with multiple textures, by simultaneously knitting multiple underpants in a large sheet of knit material with the underpants separated by the "cut remainder portion" 8.  SoF at ¶¶142-149.



1: Front upper piece
2: Back upper piece
3: Crotch portion
4: Waist portion
5: Cut edge portion
6: Cut edge
7: Ravel cord
8: Cut remainder portion
9: Upper piece
10: Knitted fabric for producing one-piece underpants

SoF at ¶149.

In fact, Nike's expert admitted that the method of making the adidas knitted textile elements in a sheet with surrounding textile structure was "within the capabilities of a POSITA in 2004." SoF at ¶¶84-85, 119-120. His only dispute was that "[he] can't say with absolute certainty" the a3 Shoe and the Wrestling Shoe were made by that method. SoF at ¶87, 121. But for obviousness, lululemon does not need to show that the a3 Shoe or the Wrestling Shoe were made through this method, much less with "absolute certainty." As set forth by the Supreme Court:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

*KSR*, 550 U.S. at 402-03.

Even assuming all factual issues in Nike's favor, a POSITA would have understood there was only two ways of making the knit textile elements found in the prior art a3 Shoe and Wrestling Shoe. That one such "predictable solution," was the patented method, shows that the claimed subject matter is obvious. *Wm. Wrigley Jr. Co. v. Cadbury Adams USA*, 683 F.3d 1356, 1364-65 (Fed. Cir. 2012) ("Under these circumstances, it is fair to say that there were 'a finite number of

identified, predictable solutions' . . . and that the [patented invention] was "the product not of innovation but of ordinary skill and common sense.") (internal citations and quotations omitted).

The fact a similar method was used in Clothing Technology and Yoshida to make textile elements for use in clothing other than footwear, illustrates that the application of such a method to footwear would have been obvious. "[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR*, 550 U.S. at 401; *see also Intercontinental Great Brands v. Kellogg N.A.*, 869 F.3d 1336, 1344 (Fed. Cir. 2017). Here the manufacturing techniques from Clothing Technology and Yoshida could be used to make knitted textile elements for the a3 and Wrestling Shoes, and Nike's expert admitted such a use would have been within a POSITA's ability. Indeed, Nike's expert testified that what method would be chosen "would depend on the equipment you have available" and "what your design goals are." SoF at ¶90. This confirms the obviousness of knitting a textile element as in the adidas shoes simultaneously with a surrounding textile structure as recited in claim 1.

### 3. <u>Step 1b: Having At Least One Knitted Texture That Differs From A Knitted Texture In The Surrounding Knitted Textile Structure</u>

The textile uppers of the prior art a3 Shoe and Wrestling Shoe each has multiple textures. SoF at ¶¶75-78, 114-115. Using the first method described above (i.e., knitting a sheet of the adidas multi-textured textile elements with surrounding textile structure between them), the textile elements must have "at least one knitted texture" that differs from "*a* knitted texture in the surrounding knitted textile structure." For example, if a knitted textile element contains textures A and B, and the surrounding textile structure has textures A and B, then texture A in the textile element is different from texture B in the textile structure and thus the claim limitation is met.

Accordingly, this limitation would have been obvious in light of the a3 Shoe and the Wrestling Shoe.

Nike contests what it means for "the knitted textile element [to have] **at least one** knitted texture that differs from **a** knitted texture in the surrounding knitting textile structure." Nike contends that this limitation is only met when there is "a texture inside the [textile] element that is not found in the surrounding textile [structure]." SoF at ¶91. To make such argument, Nike and its expert essentially rewrite the claim language to read: "the knitted textile element having at least one knitted texture that differs from ~~a~~ [any] knitted texture in the surrounding knitted textile structure." The Court should reject Nike's untimely claim construction argument as inconsistent with the plain meaning of the claim. But this limitation would have been obvious even under Nike's tortured interpretation.

Nike's expert admits that under Nike's construction the claim encompasses "a knitted textile element having two textures, Texture A and Texture B, and the surrounding knitted textile structure is only Texture A." SoF at ¶165. The expert reasoned that in this configuration, "the knitted textile element would have a knitted texture, B, that does not exist in the surrounding textile structure." SoF at ¶165. Even under this interpretation, the limitation would have been obvious because at the time of the '749 patent a POSITA would have been motivated to eliminate unnecessary textures in the surrounding textile structure to create efficiency and reduce costs.

Nike's expert admits that "a skilled artisan making shoes in 2004 would have been motivated to make shoes cost effectively." SoF at ¶164. Nike's expert testified "the idea here is to make the surround[ing] textile as simple and inexpensive and low use of material as possible" and including additional textures in the "surrounding textile structure" would slow down production, use additional materials, and lead to "lost efficiency." SoF at ¶¶163-164. Thus, a

POSITA would have been motivated to not include all textures of the textile element in the surrounding textile structure.

    **4.**    **<u>Step 3: Incorporating the Knitted Textile Element into the Article of Footwear</u>**

Neither Nike nor its expert dispute that in manufacturing the a3 Shoe and Wrestling Shoe, the knitted textile element is "incorporated into [the shoe]." SoF at ¶116.

    **5.**    **<u>The Level of Skill in Art is Not Disputed and Does Not Alter the Obviousness Conclusion</u>**

The parties largely agree on the level of skill in the art. SoF at ¶¶160-161. Further, Nike and its expert do not contend any difference in level of skill in the art is material. SoF at ¶162. Thus, the level of skill in art is not a fact that would preclude summary judgment of obviousness. *KSR*, 550 U.S. at 427 ("Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.").

    **6.**    **<u>There is No Evidence of Secondary Considerations and, Even if There Were, They Would Not Alter the Obviousness Conclusion</u>**

The only secondary consideration identified by Nike in response to an Interrogatory is "copying," but this conclusory allegation is not specific to the '749 patent. SoF at ¶150. Nike's experts do not discuss secondary considerations in their expert reports and Nike has made no effort to show even if copying existed there was a nexus to the claimed invention. SoF at ¶159. Nike's Interrogatory response cites several complaints against third-parties and settlement agreements. SoF at ¶¶150-158. But such documents provide no evidence of copying by anyone. Nike does not cite to any internal lululemon documents evidencing copying and does not cite to any documents showing lululemon failed to design around the patent. But even assuming Nike had not waived reliance on the alleged secondary consideration, "where a claimed invention represents

no more than the predictable use of prior art elements according to established functions, as here, evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness." *Ohio Willow Wood*, 735 F.3d at 1344.

In sum, claim 1 of the '749 patent would have been obvious to POSITA in view of the adidas A3 Shoe and Wresting Shoe. Where, as here, a POSITA would recognize there were two known ways to make a known article (i.e., the knit textile elements of the adidas shoes), choosing one such way is not a patentable invention. The method of claim 1 is invalid as obvious.

**D.    Claim 14 Would Have Been Obvious Over Each Of The adidas A3 Shoe And Wrestling Shoe**

Claim 14 depends from Claim 13. Claim 13 includes the same three basic steps as claim 1. Claim 13 adds knitting a second textile element with "the first knitted textile element located within a first portion of the knitted textile structure, the second knitted textile element located within a second portion of the knitted textile structure" and recites that the surrounding textile structure "extending between the first and second portions." SoF at ¶45. Claim 13 also adds "varying at least one of the types of stitches or the types of yarns in the knitted textile structure to impart a texture to the first and second knitted textile elements different from a texture of the knitted textile structure extending between the first and second portions." SoF at ¶45. Claim 14 depends from claim 13 and adds "knitting an outline of the first textile element" to the knitting step. SoF at ¶46.

Nike and its expert raise no dispute regarding limitations added by claim 13 beyond their arguments as to claim 1. SoF at ¶166.

As with claim 1, a POSITA would have understood that one of the finite predictable ways of making the knitted textile elements of the a3 Shoe and Wrestling Shoe would have been knitting the textile elements in a sheet of surrounding textile structure. SoF at ¶¶84-92, 119-125.

With respect to knitting an outline as recited in claim 14, a POSITA would have also found this obvious. Yoshida, Clothing Technology, Zuckerman, and Knoblauch described above all show the use of an outline. SoF at ¶¶132, 135, 141, 148-149. Moreover, Nike's expert testified that the use of an outline would include both visible and invisible outlines, and would only not be met if the textile element was cut out at random from the larger fabric. SoF at ¶167. Nike's expert confirm that in 2004 a skilled artisan would have understood "[i]ncluding an outline would improve the quality of the product you're making" and without an outline one "wouldn't be achieving the precise goals of the designer." SoF at ¶¶168-169

In sum, claim 14 of the '749 patent would have been obvious to POSITA in view of the A3 Shoe and Wresting Shoe. Where, as here, a POSITA would recognize two known ways to make a known article (i.e., the knit textile elements of the adidas shoes), choosing one of the two ways is not a patentable invention. Adding a second textile element and knitting an outline to show where to cut an element does not make the method any less obvious. The method of claim 14 is also invalid as obvious.

## V.  CONCLUSION

For the foregoing reasons, lululemon asks the Court to grant summary judgment on all asserted claims.

Dated:  July 29, 2024

Respectfully submitted,

/s/ Ali S. Razai
Ali S. Razai
Joseph F. Jennings
Brandon G. Smith
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614-3641
Tel.: (949) 760-0404

Inzer C. Ni
inzer.ni@knobbe.com
Stacy Rush
stacy.rush@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1155 Avenue of the Americas, 24th Floor
New York, NY 10036
Tel: (212) 849-3000

Jonathan E. Bachand
Jonathan.bachand@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Avenue N.W.
Suite 900
Washington, DC 20006
Tel: 202-640-6400

Yanna S. Bouris
Yanna.bouris@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East
Suite 400
Los Angeles, CA  90067
Tel: (310) 551-3450

*Attorneys for Defendant*
LULULEMON USA INC.

**CERTIFICATE OF SERVICE**

The undersigned herby certifies that on July 29, 2024, the attached document was filed electronically through CM/ECF system, which will send notice to the registered participants identified on the Notice of Electronic Filing.


Dated:  July 29, 2024                    By: /s/ *Ali S. Razai*
                                             Ali S. Razai

                                        *Attorneys for Defendant*
                                        LULULEMON USA INC.