UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Nike, Inc., | |
| Plaintiff, | 23-cv-771 (AS) |
| -against- | |
| lululemon usa inc., | OPINION AND ORDER |
| Defendant. | |

ARUN SUBRAMANIAN, United States District Judge:

The motions before the Court arise from a patent infringement trial. Nike, the holder of two patents related to shoes, sued lululemon for selling shoes that allegedly infringed its patents. The jury returned a verdict for Nike on one of the two patents—the '749— awarding $355,450 in damages. Dkt. 314. Mutually dissatisfied with that outcome, both sides filed post-trial motions with respect to the '749 patent that the jury found was infringed. Nike wants to get more money—it asks the Court (1) to amend the judgment to include supplemental damages and interest and (2) for judgment as a matter of law on pre-suit damages (and in the alternative, a new trial on the question). Fed. R. Civ. P. 59(e), 50(b), 59(a)(1). lululemon, wants to throw away the verdict entirely—it asks the Court for (1) judgment as matter of law on whether the asserted claims of the '749 patent are invalid for obviousness and, in the alternative, (2) a new trial based on alleged violations of the Court's holdings on the motions in limine. Fed. R. Civ. P. 50, 59.

lululemon's motion for judgment as a matter of law is GRANTED. All other motions are DENIED as moot.

## BACKGROUND

Nike holds patents in techniques for creating the textiles that are used in sneakers. At issue here is a patent that describes how a large textile is knitted with parts that can be cut out and used as the "uppers" of sneakers: the '749 patent. The parts used to make the uppers are textured through a knitting process called "warp knitting," in which a large textile and parts that are cut out and used for the uppers are knitted all at the same time (more on this later). lululemon sold shoes that use this process. Nike sued.

At trial, lululemon argued that Nike's patent was invalid because it's obvious and that lululemon didn't control the factories where the shoes were made, so it wouldn't owe pre-suit damages. To show that the method would be obvious to a person of ordinary skill in the art, lululemon presented two examples of shoes made by adidas that it said used the same technique before Nike ever filed its patent, as well as other examples of knitted items using similar techniques. And to show that it didn't control the factories, lululemon pointed to the complexities of its production

chain, which involved upstream industry participants that it had no contact with. At the close of trial, both sides moved under Rule 50(a) for judgment as a matter of law. Tr. 871–84. The Court reserved judgment and the case went to the jury. Tr. 884:23.

The jury found that lululemon infringed the '749 patent but that it hadn't controlled its manufacturers and so had to pay only a lower sum: $355,450. Dkts. 314 at 5; 319. Now, both sides have filed post-trial motions. Nike's motions ask for greater damages or interest; lululemon's for either judgment as a matter of law on the validity of the '749 patent or a new trial. lululemon's motion for judgment as a matter of law presents a threshold issue to reaching any of the other questions. If Nike's patent is invalid because it's obvious, then every other issue is moot.

## LEGAL STANDARDS

Cases involving patents are governed by a mix of law from the regional circuit and the Federal Circuit. "[I]ssues of substantive patent law and certain procedural issues pertaining to patent law" are governed by Federal Circuit precedent, but "the law of the regional circuits" applies "on non-patent issues." *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381 (Fed. Cir. 2003). Post-trial motions are analyzed "under regional circuit law, the Second Circuit in this case." *Whitserve, LCC v. Comput. Packages, Inc.*, 694 F.3d 10, 18 (Fed. Cir. 2012).

To grant a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, "the Court must find that a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-movant." *Perry v. City of New York*, 78 F.4th 502, 517 (2d Cir. 2023) (cleaned up). That is, the Court must deny the motion "unless there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id.* (citation omitted). "The burden on the movant is particularly heavy where, as here, the jury has deliberated in the case and actually returned its verdict." *Id.* (internal quotation marks omitted).

In evaluating the Rule 50 motion, the Court "consider[s] the evidence in the light most favorable to the non-moving party and give[s] that party the benefit of all reasonable inferences that the jury might have drawn in that party's favor." *Id.* (cleaned up). "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury, and must disregard all evidence favorable to the moving party that the jury is not required to believe." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (internal quotation marks omitted).

## DISCUSSION

### I.    Nike waived any argument that lululemon's challenge was not preserved

Before proceeding, the Court cleans up a procedural tangle. When lululemon orally made its 50(a) motions it clearly did so on a few grounds: infringement, pre-suit damages, and damages more generally. Tr. 874–81. But counsel for lululemon didn't mention validity or obviousness,

except in response to *Nike's* Rule 50 motion on validity. There, after noting that "I think that would be our affirmative motions," counsel for lululemon added "one last thing, if I am going to respond" and proceeded to address validity. Tr. 881:13–16. Counsel proceeded to explain that lululemon had introduced "sufficient evidence in the record to conclude that" the patent claims were obvious. Tr. 882:7–9. But "sufficient evidence in the record" is an argument that *the other side*—here, Nike—isn't entitled to judgment as a matter of law, not that the party pointing to that evidence— lululemon—should itself get such relief.

That might have been a silver bullet argument for Nike. After all, "the grounds on which a party may rely in a Rule 50(b) motion are limited to those grounds that were specifically raised in the prior Rule 50(a) motion." *Ojeda v. MTA*, 477 F. Supp. 3d 65, 73 (S.D.N.Y. 2020) (cleaned up) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998)). But just as a party can fail to preserve an argument, so too can the opposing party waive its argument against preservation. *Gronwoski v. Spencer*, 424 F.3d 285, 297 (2d Cir. 2005) (finding "that, after defendants raised this [non-preserved] argument in their Rule 50(b) motion, [the non-moving party] waived her right to object when she did not do so in her Rule 50(b) opposition papers" (citing *Gibeau v. Nellis*, 18 F.3d 107, 109 (2d Cir. 1994) (reaching the same conclusion))). Nike doesn't argue in its brief that lululemon failed to preserve its validity challenge, and so it has waived that argument.

## II.    The evidence at trial required a finding of obviousness

### A.  The evidence for obviousness

The jury returned a verdict for Nike on two patent claims in the '749 patent: Claim 1 and Claim 14. Dkt. 314 at 2. In doing so, it rejected lululemon's patent-invalidity arguments. At trial, lululemon bore the burden of showing obviousness "by clear and convincing evidence." *Therma-Tru Corp. v. Peachtree Doors, Inc.*, 44 F.3d 988, 992 (Fed. Cir. 1995).

At the core of both claims is a straightforward process. The idea is that the "upper" of a shoe can be made by knitting shapes with different textures into a larger piece of textile at the same time that the larger textile is knitted. The knitting happens vertically, not horizontally; it's "warp-knit," a method that allows for higher speed production. Tr. 715:13–20; 859:10–12. Once the fabric is knitted, the shapes with the different textures are cut out and folded to form the shape of a shoe. The diagrams below trace the journey that a textile takes, from woven and flat, to cut out, to folded into the shape of a shoe (shown from above). PX-1 at 6, 9, 10.



Expressed more formally, Claim 1 of the '749 Patent is:

"A method of manufacturing an article of footwear, the method comprising:

[1] simultaneously knitting a textile element with a surrounding textile structure, the knitted textile element having at least one knitted texture that differs from a knitted texture in the surrounding knitted textile structure;

[2] removing the knitted textile element from the surrounding knitted textile structure;

[3] incorporating the knitted textile element into the article of footwear." PX-1 at 21.

And Claim 14 is similar. It incorporates Claim 13, which reads:

"A method of manufacturing an article of footwear, the method comprising:

[1] knitting a first textile element and a second textile element simultaneously with knitting a surrounding textile structure, the first knitted textile element located within a first portion of the knitted textile structure, the second knitted textile element located within a second portion of the knitted textile structure;

[2] varying at least one of the types of stitches or the types of yarns in the knitted textile structure to impart a texture to the first and second knitted textile elements different from a texture of the knitted textile structure extending between the first and second portions;

[3] removing the first and second knitted textile elements from the knitted textile structure;

[4] incorporating at least one of the first and second knitted textile elements into the article of footwear." *Id.*

Claim 14 then adds that it is the "method of Claim 13" just described, "wherein knitting a first textile knitted element simultaneously with a surrounding knitted textile structure includes knitting an outline of the first knitted textile element." *Id.*

4

The issue here is whether these inventions were obvious at the time Nike patented them. A patent is invalid if it "would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). That turns on a four-part factual inquiry into "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1308 (Fed. Cir. 2010).

To start, the parties are in general agreement about the level of ordinary skill in the art. lululemon's expert testified that it's "someone who has at least an undergraduate degree in textile engineering, mechanical engineering, or a field related to that … [and] has at least three years of experience in the field of textiles." Tr. 601:5–9. And although Nike's expert used a slightly different standard, he testified that using either his or lululemon's definition "does not affect [his] analysis." Tr. 825:12–13.

So the question is: In 2004 would it have been obvious to somebody of that skill to make a shoe in the way envisioned by the '749 patent? That's where the parties are locked in intense opposition. lululemon's argument is that: (1) the *general* method of warp-knitting was well-known at the time, exemplified by some examples of underwear and other textiles; then, (2) in the specific context of footwear, there were two shoes that had already been made using the exact method described in the '749 patent: the adidas a3 and the adidas Wrestling Shoe. That second part is where Nike disagrees. On its view, it isn't clear that the adidas shoes were warp-knit the same way that the '749 patent describes. Specifically, the patent involves the use of a large "surrounding textile structure," which would mean that a wide piece of textile is first knitted (along with shapes inside), and then afterward the shapes are cut from it. That, it says, isn't how the adidas shoes were made, and so it wasn't obvious. Cue the battle of the experts.

lululemon put on two experts, David Brookstein and Deborah Young. Neither was personally familiar with how the adidas shoes were made—they hadn't reviewed any technical specifications, asked anybody about them, or watched a video. Instead, Brookstein, a textile engineer, cut the adidas a3 apart to figure out how it was put together. He concluded that the side-paneling was both shaped irregularly and made by warp-knitting. That, he said, can't be done without warp-knitting the irregular pattern into a larger textile structure and cutting it out, because warp-knitting can't produce irregular shapes without also creating waste (or, put differently, a surrounding textile structure). Tr. 597, 599. Young reviewed photos of the shoe that Brookstein cut apart. Tr. 756:20–757:2.

Pastore, Nike's expert, had a different view of the dissected shoe. Like Young, he didn't cut it open himself. Tr. 832:23–833:2. But he said it was "hard to tell" whether its sides were shaped irregularly after the shoe was already made because the panel was "sewn to other pieces and stretched over a last and heat pressed into the sole." Tr. 831:7–9, 833:5. He went on to describe another way that the side panel could have been made: by "knit[ting] three stripes that are surrounded by the nonstriped region," in "a big long piece of [textile]" and then "cut[ting] it to different lengths." Tr. 830–31. In other words, that a long skinny textile could have been used instead of wide one, then the long ribbon could be cut into lots of little pieces with width-wise cuts. *Id.*

Importantly, this would be possible if the desired textile wasn't irregularly shaped. That way, each pair of cuts would produce the desired textile shape, without any wasted textile in between. And, of course, Pastore's view was that it wasn't possible to tell if the side-paneling was irregularly shaped from the provided photos, and so it wasn't clear if this method was used or if warp-knitting with waste was used.

That means that the jury was presented with evidence that the shoe could have been made in one of two ways.[1] First, it could have been warp-knit and cut out of a larger surrounding textile, just like the '749 patent describes. Second, it might have been knit in a big line and then simply cut into smaller strips without any waste. If the only question in this trial is which way this shoe was made, lululemon certainly wouldn't be entitled to judgment as a matter of law. A reasonable jury could certainly have found the second option more convincing than the first or simply that it was impossible to determine between the two. So lululemon isn't entitled to judgment as a matter of law on any theory of obviousness that relies on showing that the adidas shoes were made the exact same way as the '749 patent.

But that isn't the only theory of obviousness in this case. lululemon argues that this framing would confuse anticipation with obviousness, two separate legal inquiries with separate legal requirements. While anticipation requires that "the claimed invention was previously known, and that all of the elements and limitations of the claim are described in a single prior art reference," *Hakim v. Cannon Avent Grp., PLC*, 479 F.3d 1313, 1319 (Fed. Cir. 2007), "[e]ven if a reference's teachings are insufficient to find anticipation, that same reference's teachings may be used to find obviousness." *CRFD Rsch, Inc. v. Matal*, 876 F.3d 1330, 1345 (Fed. Cir. 2017). To address obviousness directly, let's assume that the adidas shoes were made using a long skinny strip of textile. On that assumption, would it have been obvious to a person of ordinary skill in the art to make a shoe by using a warp-knit big wide textile instead? Here, lululemon's evidence is both stronger and unrebutted.

lululemon introduced the following evidence at trial in support of obviousness. First, one of its experts testified that the general idea of cutting out irregular shapes from a larger woven textile had been known for a long time before 2004—and that he in fact had done so personally. Tr. 611:4–612:8. Second, there are a bunch of examples of warp-knitting being used prior to 2004 to make different clothing, for example lace bras, underwear, and even a shoe. DX 202 (underwear); DX 156 (bra and underwear); DX 403 (shoe). Warp-knitting, the record shows, is done by "simultaneously knitting a textile element with a surrounding textile structure. Tr. 733:17–24. Third, this often involves a "cut outline," which is "knitted in." Tr. 722:17–21. Before proceeding to the rest of the evidence, consider just how closely these past examples resemble the process at issue

---

[1] Nike argues that its expert didn't present one alternative construction but instead as many as nine. But to reach that conclusion, it parses each *step* that its expert described as part of a *single* process and retroactively re-characterizes them as separate processes in and of themselves. *See* Tr. 830:20–831:9; 832:5–11. This doesn't affect the Court's ultimate conclusion, which doesn't turn solely on whether or not the patented methods were utilized in the adidas shoes.

in this case. In the exhibit below, you can observe a surrounding textile structure, internal parts to be cut out with a varying texture, and an outline separating them from the rest of the structure.



DX 156.

Fourth, one of lululemon's experts testified that the process for knitting footwear isn't any different from knitting other clothing: "the only thing that's going to change is the size or type of the yarn, the density, but the fabric is the same" and "the machine is the same." Tr. 726:17-18, 20. And fifth, there's an economic rationale for knitting a big textile and then cutting out the outlined pieces: It saves money by operating at larger scale and, by using contrasting textures, reduces the risk of "disturb[ing] or reorient[ing] the yarns that are on the edges of your irregular piece." Tr. 612:23–24. That's why "you actually want waste." Tr. 613:1. None of this is disputed by Nike or its expert.

Let's put that together. In 2004, a person of ordinary skill in the art would have known about warp-knitting and known that it could be used to make a shoe. After all, there were other examples of knitted shoes and even a warp-knitted shoe. Tr. 859:7–9; DX 403. What about the next step, using a surrounding textile structure and using an outline? Well, this person would have known that warp-knitting can produce an irregular pattern by creating areas with contrasting textures that can be cut out of the surrounding waste textile. And this person would know that a knitted outline would help to avoid displacing any threads in the textured area when cutting. There wasn't a technical barrier to making a shoe this way; as Nike's expert conceded, the patent describes using a "known knitting machine." Tr. 861:7. With that the stage was set—the cherry on top is that there was an economic incentive to combine all these elements and make a shoe this way. Tr. 612:23–613:1. In sum, that's lululemon's second argument—that, whether the adidas shoes were made

this way or not, there were only two options presented at trial for how they could have been made, the method described in in '749 patent was one of them, and based on the state of the prior art it would have been obvious to do it this way. Dkts. 332 at 9–10; 347 at 1–2.

"[T]here is no requirement that the prior art contain an express suggestion to combine known elements to achieve the claimed invention. Rather, the suggestion to combine may come *from* the prior art, as filtered through the knowledge of one skilled in the art." *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997). When the constitutive elements are known and there's an economic incentive to combine them, that's enough for obviousness. *Id.* (considering the motivation to combine prior references because of "cost and simplicity").

On that view, it's difficult to understand how a person of ordinary skill in the art wouldn't think to put these elements together. The Supreme Court's directives on obviousness are clear:

> When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

*KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007).

That's exactly the case here.

### B. Nike didn't rebut that evidence

Nike offers not a single argument in its post-trial briefing explaining why a person of ordinary skill familiar with the state of the art wouldn't implement this predictable variation, as lululemon argues. Nike instead offers the following arguments: (1) that its expert provided examples of different ways that the adidas shoes could be knit; (2) that its expert testified as to obviousness, while lululemon's experts didn't; and (3) that lululemon's experts lacked credibility. As explained, the first argument doesn't foreclose a finding of obviousness based on the undisputed testimony regarding the state of the art.

As for the second argument, Nike argues that neither of lululemon's experts opined on "the ultimate conclusion of obviousness," Dkt. 345 at 5, while its expert did. But there's no dispute that there was evidence and opinions offered on the underlying facts. Nike doesn't point to any authority suggesting that an expert's opinion on the ultimate conclusion of obviousness matters for purposes of the Rule 50 analysis. And with good reason, because "[t]he ultimate judgment of obviousness is a legal determination." *KSR*, 550 U.S. at 427. For this reason, "[a]n expert's opinion on the ultimate legal conclusion [of obviousness] is neither required not indeed 'evidence' at all." *Nutrition 21 v. United States*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *see also, e.g., High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013) (holding that "an expert's opinion on the legal conclusion of obviousness is neither necessary nor controlling" (quoting *Avia Grp. Intern., Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988))).

That just leaves Nike's arguments that lululemon's witnesses weren't credible. Each of these fails, and the Court takes them in turn.

*First*, Nike tries to characterize a small miscommunication as a Perry Mason moment. Young testified that warp knitting is done "only" "by making a large sheet with lots of little pieces … [with] connective tissue called surrounding textile structure." Tr. 731:20–23. Nike argues that, by showing her a textbook that showed that it could instead be made in a long strip, its lawyers discredited the expert. But that takes Young's testimony totally out of context. Her point was only that "[w]arp knitting machines cannot knit to shape," and that the only way *to make a "shaped piece"* is to use a surrounding textile structure, not that warp-knitting itself couldn't involve something like a long strip. Tr. 731:20–23. When asked whether a long strip could be used in warp-knitting generally, the expert readily agreed. Tr. 760:11–17.

*Second*, Nike argues that its expert testimony contradicted that of lululemon's experts, rendering them non-credible. The core of the dispute is about the side panel of the adidas shoes—lululemon's experts said it was probably irregularly shaped and Nike's expert said that he couldn't tell. As already explained, the ultimate answer to that question doesn't form the basis of the Court's finding of obviousness. Nike's argument about credibility must be that the disagreement was *so* damning that a reasonable jury would have disregarded *all* of the other testimony from both lululemon experts. That's absurd, given that this is a classic disagreement between experts and Nike has provided no argument as to why the jury might have disregarded the experts' testimony entirely. But in any event, what does it matter given that aside from how the adidas shoes were made, the experts didn't disagree about anything else relevant to the obviousness inquiry.

*Third*, Nike argues that lululemon's engineering expert, Brookstein, either didn't testify explicitly as to obviousness as a legal conclusion or didn't even offer an opinion on "simultaneously knitting a textile element with a surrounding textile structure." Dkt. 345 at 6. As an initial matter, the permitted scope of Brookstein's testimony was addressed at length before trial. But suffice it to say that once again, nothing in Brookstein's testimony or his credibility (or lack of it) affects the issue of obviousness, given that it follows from what the experts agreed to at trial, not on anything they disagreed about. And as mentioned above, the experts' opinions as to the legal conclusion of obviousness (or lack of them) are irrelevant to the Court's inquiry.

*Fourth*, Nike argues that Young didn't read the patent "in full" while preparing her report. But this misses the point; she read it before preparing the report. Tr. 751:24–752:2. And, although she didn't read the prosecution history, Nike doesn't explain why that would have affected her analysis, let alone her credibility.

*Fifth*, Nike claims that Brookstein was underqualified because, though he worked with textiles, he didn't work with footwear specifically. But Nike doesn't identify why this would matter, especially in light of its *own* expert who lacked experience with *knitted* footwear. Tr. 859:3–6.

9

### C. The claims as a whole are obvious

The above analysis demonstrates that Claims 1 and 14, when considered as a whole, were obvious as a matter of law at the time of invention. However, to double check its work, the Court goes element-by-element through the relevant claims. *See Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1086 (Fed. Cir. 2008) ("The determination of obviousness is made with respect to the subject matter as a whole, not separate pieces of the claim."); *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1108 (Fed. Cir. 1987) (in determining obviousness, "the inquiry is not whether each element existed in the prior art, but whether the prior art made obvious the invention as a whole for which patentability is claimed").

#### 1. Claim 1

Claim 1 has a preamble and three elements. Each is obvious by virtue of the prior art, and combining them into a whole was also obvious.

*Preamble*: This part of the claim simply states that it's a "method of manufacturing an article of footwear, the method comprising" the following parts. PX-1 at 21. By itself, this has no content. It depends on what comes next.

*Element 1*: Next, Claim 1 specifies that the method involved "simultaneously knitting a textile element with a surrounding textile structure, the knitted textile element having at least one knitted texture that differs from a knitted texture in the surrounding knitted textile structure." *Id.* This is warp-knitting a big textile with differently textured parts inside of it. As discussed, this would have been obvious given the combination of the preexisting practices of: (1) cutting irregular pieces out of bigger textiles, (2) warp-knitting generally, and (3) the clear commercial incentive. *See in re Raynes*, 7 F.3d 1037, 1039 (Fed. Cir. 1993) (use of "flat-panel visual displays" that were "known display systems" but "not then used in video applications" were obvious to combine into video display); *I/P Engine, Inc. v. AOL Inc.*, 576 Fed. Appx. 982, 986 (Fed. Cir. 2014) (combining "two information filtering methods that were well-known in the art" was obvious when there were "advantages" known from doing so).

*Element 2*: Then Claim 1 clarifies that the method involves "removing the knitted textile element from the knitted textile structure." PX-1 at 21. Again, this would be the point of knitting the big textile in the first place, and so is obvious for the same reasons, and there's no argument from Nike to the contrary.

*Element 3*: Finally, "incorporating the knitted textile element into the article of footwear." *Id.* Given that this required no different or special technology, that there is evidence of a prior warp-knit shoe, and that there is a commercial incentive to make shoes this way, this too is obvious.

#### 2. Claim 14

Claim 14 incorporates Claim 13 and adds one other requirement. So the Court starts with the elements of Claim 13.

*Preamble*: This is the same as in Claim 1, and so similarly depends on what comes next. *Id.*

10

*Element 1*: The first element is a little more complicated than in Claim 1. Namely, it adds another texture. It reads: "knitting a first textile element and a second textile element simultaneously with knitting a surrounding textile structure, the first knitted textile element located within a first portion of the knitted textile structure, the second knitted textile element located within a second portion of the knitted textile structure." *Id.* Put plainly, this is warp knitting with *two* different textures on it. If it's obvious to vary the textures, it's obvious to do it more than once.

*Element 2*: Next, the method involves "varying at least one of the types of stitches or the types of yarns in the knitted textile structure to impart a texture to the first and second knitted textile elements different from a texture of the knitted textile structure extending between the first and second portions." *Id.* This describes using a change in the type of stitching or in the type of yarn to achieve the variation in texture—that's how lululemon's experts described the previous examples of warp knitting having worked without contradiction. *See, e.g.*, Tr. 722:8–10. So that too is obvious.

*Element 3*: After knitting, the next step is "removing the first and second knitted textile elements from the knitted textile structure." PX-1 at 21. That's just cutting them out, which has already been described as obvious.

*Element 4*: The final step of Claim 13 is "incorporating at least one of the first and second knitted textile elements into the article of footwear." *Id.* And, for the reasons discussed with respect with Claim 1, this would have been obvious.

*Claim 14*: The only addition in Claim 14 is that the claimed knitting of "a first textile knitted element simultaneously with a surrounding knitted textile structure includes knitting an outline of the first knitted textile element." *Id.* One of lululemon's experts explicitly testified that this technique was well-known in the prior art and that went unrebutted. Tr. 723:5–17.

\* \* \*

Nike devoted much of its trial time and its briefing to arguing about the adidas shoes. That overlooked important evidence and arguments that the prior state of the art, taken together, rendered its patent claims obvious even without proof that the adidas shoes were made the exact same way.

### CONCLUSION

lululemon's motion for judgment as a matter of law on patent invalidity is GRANTED. The motions to seal are GRANTED. All other motions are DENIED AS MOOT.

The Clerk of Court is directed to terminate Dkts. 331, 334, 335, and 339 and to amend the judgment, Dkt. 319, to read as follows:

1. Judgment is granted as a matter of law to lululemon usa inc. on Claims 1 and 14 of U.S. Patent No. 8,266,749, as the patented claims are invalid as obvious;

2. Pursuant to a jury's verdict delivered on March 7, 2025:

11

a.  lululemon usa inc. does not infringe claims 1, 8, and 16 of U.S. Patent No. 9,735,046 by making, using, offering to sell, or selling within the United States, or importing into the United States, the Chargefeel Mid, Chargefeel Mid Lunar New Year, and Chargefeel Mid 2 shoe;

b.  Claims 1, 8, and 16 of U.S. Patent No. 9,375,046 are not invalid as anticipated by the Nike Lunar 1;

3.  Nike, Inc. is not entitled to any damages.

The Clerk of Court is also directed to notify the United States Court of Appeals for the Federal Circuit of this disposition, Dkt. 342, and to close the case.

SO ORDERED.

Dated: March 31, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge

12